UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION
TOLEDO, OHIO

| | |
|---|---|
| In Re: | Successor Judge |
| Steven Paul Klausing and Janet Rose Klausing | Case No.: 12-3034 |
| | (Related No.: 11-35901) |
| Debtor | |
| DOUGLAS DALEY, SPECIAL ADMINISTRATOR FOR AND ON BEHALF OF THE ESTATE OF PAULA MINZING | **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT WITH MEMORANDUM IN SUPPORT** |
| Plaintiff | |
| vs. | |
| Janet Rose Klausing, et. al | |
| Defendant | |

Now comes Defendant, Janet R. Klausing, by and through her undersigned counsel, pursuant to Federal Rule of Civil Procedure 56(B) and Federal Rule of Bankruptcy Procedure 7056(B), and respectfully moves this Court for an order granting summary judgment in favor of Defendant with respect to the remaining cause in this action, all as is more fully set forth in the following Memorandum in Support.

**WHEREFORE,** the Defendant would pray that she be granted summary judgment on the issue of dischargeability of the debt to the Estate of Paula Minzing, that such debt be deemed

1

to be discharged and other such relief as is just and equitable in the premises.

> Respectfully submitted,
>
>    /s/Steven L. Diller
> Steven L. Diller (0023320)
> 124 E. Main Street
> Van Wert, OH 45891
> Telephone: (419) 238-5025
> Facsimile: (419) 238-4705
> Email: steven@drlawllc.com

**MEMORANDUM IN SUPPORT**

### I. Procedural History

**A. Related to this Proceeding**

The Debtor[1], Janet R. Klausing ("Klausing") filed the related Chapter 7 bankruptcy on October 31, 2011. By amendment, a claim owing to the Plaintiff in this case was scheduled on Schedule D, as a secured claim based on a judgment in the amount of $40,926.10 in favor of the Plaintiff against Klausing entered by the Probate Court of Van Wert County and a corresponding certificate of judgment. ("the Debt") (A copy of the Probate Court's decision is included as Exhibit A in the Supporting Documents included herewith.) On February 21, 2102, the Plaintiff timely commenced this adversary proceeding[2] to determine the dischargeability of the Debt.

**B. Prior to this Case**

Prior to filing for bankruptcy, Klausing had initiated an action against James D. Pohlman in the Court of Common Pleas of Allen County, Ohio on June 6, 2011 for attorney malpractice and other claims based on his failure to provide accurate and appropriate legal advice as counsel

---

[1] It was a joint petition with the debtor's spouse, Steven Klausing who is not a Defendant in this proceeding.

[2] The complaint also sought a declaratory judgment and such issue has previously been resolved. (Docket No. 25)

to Klausing as the Executrix of the Estate of Paula Minzing ("the Estate") and thereby breaching his professional duty owed to the Klausing and the Estate.  (A copy of the Amended Complaint is included as Exhibit B, the Answer of James D. Pohlman as Exhibit C, Pohlman's Affidavit as Exhibit D and Pohlman's Deposition Transcript as Exhibit E and Janet Klausing's Deposition Transcript Exhibit F in the in the Supporting Documents included herewith.)

### C. Statement of Applicable Facts in the Probate Case

Klausing had worked for approximately seventeen (17) as a secretary for Paula Minzing, an attorney in Delphos, Ohio.  On September 11, 2007, Ms. Minzing died.  In her will, (the "Minzing Will") she named Klausing as the Executrix.

During Klausing's employment with Minzing she had come into contact with James D. Pohlman.[3]  When Minzing died, Klausing took the Minzing Will to Pohlman for legal representation in the probate of the Estate. (Amended Complaint at ¶ 4).  Pohlman held himself out to be an experienced probate attorney having handled several probate matters in both Allen and Van Wert County. (Amended Complaint at ¶ 6). Pohlman admits that about 50% of his law practice is devoted to estate administration. (Pohlman Affidavit, ¶ 4). In October 2007, Pohlman, appearing as attorney for the Estate, admitted the Minzing Will to probate and appointed Klausing as Executrix. (Amended Complaint at ¶ 6).

Thereafter, Klausing communicated with Pohlman or his paralegal regarding the completion of her responsibilities as Executrix. (Amended Complaint, ¶ 8). Klausing performed clerical work pertaining to the disposition of legal files left by Minzing and Minzing's former associate after her death, and cleaning work of her various properties from September 2007 through May 2009. (Amended Complaint at ¶¶ 12,14). Klausing was told by Pohlman that her

---

[3] Mr. Pohlman had acted as counsel for Minzing's mother's estate in July of 1996. (Amended Complaint, at ¶3)

actions were appropriate and to track her hours for compensation. (Amended Complaint at ¶ 13; Pohlman Deposition, ¶ 55). Klausing compensated herself at the same hourly rate that Minzing had paid her when she worked as her secretary. (Amended Complaint *at* ¶ 13.). Despite Mr. Pohlman's direction and advice to Klausing, Pohlman never recommended to her nor did he seek on her behalf Probate Court's approval for Klausing to perform any labor or to be compensated. (Amended Complaint at ¶ 14).

Klausing filed Estate tax returns that were prepared and also signed[4] by Pohlman that also included such expenses. (Pohlman Deposition, Page 17, Line 24, Exhibit 5) Klausing filed her Fiduciary's Account prepared and signed by Pohlman[5] documenting the hours of cleaning and office work she had done with respective compensation for those actions. Exceptions were filed by the beneficiaries of Minzing's estate. (Pohlman Affidavit, ¶¶ 7,10). At that point, Pohlman advised Klausing to obtain private counsel as he refused to represent her any further in the matter. (Pohlman Affidavit at ¶ 11). After hearings were conducted on the Exceptions, the Probate Court found there were excessive fees paid to both Klausing and her husband totaling $40,926.10. (Judgment Entry, ¶ 12). Klausing was able to make a payment of $325.00 before declaring bankruptcy leaving a total debt to the Estate of $40,601.10.

## II. <u>Summary Judgment Standard</u>

Federal Rule of Civil Procedure 56(c) made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7056 directs that summary judgment is appropriate when

---

[4] Depending on the taxing authority, such a signature is advancing a (i) a position reflected on a tax return on which a member has specifically advised a taxpayer or (ii) a position about which a member has knowledge of all material facts and, on the basis of those facts, has concluded whether the position is appropriate.

[5] Ohio Civ. R. 11 provides …"A signature constitutes a certificate by the attorney that the attorney or party has read the documents; that to the best of the attorney's or party's knowledge, information, and belief that there is good ground to support it…"

4

there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *In re Morello*, 07-21151, 2012 WL 1945509 (Bankr. D. Conn. May 30, 2012). Factual disputes under the governing law that would affect the outcome of the suit preclude the entry of summary judgment. *Id.* The judge's function is to determine whether there is a genuine issue for trial. *Id.* The burden of showing that there are no material facts in dispute rests with the moving party and all ambiguities are resolved against the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970) (superceded on other grounds). A complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial so that there can be no genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party is then entitled to judgment as a matter of law because the nonmoving party has failed to prove an essential element of their case for which they have the burden of proof. *Id.*

### A. Undisputed Facts In Support of Summary Judgment

1. Defendant, Janet Klausing, was not an attorney, but a nonprofessional operating as a trustee of the Estate of Paula Minzing. (Amended Complaint, ¶ 3; Answer, ¶ 1)

2. Klausing employed James D. Pohlman in her capacity as Executor of the Estate. (Amended Complaint, ¶ 4; Answer, ¶ 1)

3. Klausing relied on the advice of Pohlman who had held himself out to be experienced in probate matters. (Pohlman Affidavit, ¶ 4; Pohlman Deposition, ¶ 8)

4. Klausing sought approval of her actions as Executor from an attorney, Mr. Pohlman, before taking such actions. (Answer, ¶ 1) (Klausing Deposition Transcript, Page 56, Line 5)

5. Klausing informed Pohlman of the work she was doing for the Estate and Pohlman responded with approval telling Klausing to maintain a record of the hours that she worked and the compensation that she received. (Amended Complaint, ¶13.)

6. Pohlman prepared and signed under Ohio Civil Rule of Procedure 11, Klausing's Fiduciary Accounting and filed the document with the Probate Court. Additionally, Pohlman also prepared the Estate tax returns and included the claimed expenses as a deductions under similar affirmations.

7. Klausing sought Pohlman's advice for all the relevant decisions she made as a fiduciary including her decision to perform documented work at the same hourly rate she had received prior to the death of her employer. (James Pohlman Deposition Transcript, Page 22).

8. Pohlman also testified that his advice and direction to Klausing was based on the following:

> Q. As it relates to the cleaning....was there any application filed for 4 pre-approval by the Court for extraordinary services to be rendered by Jan to the estate?
> A. No, because I have been practicing in that court for 30 years and that was the first we had an issue like that. That was a common practice.
> Q. Is it your testimony that in that court it's -- you mean Van Wert County Probate Court?
> A. Yes.
> Q. That not only Judge Fortney but his predecessor, the woman, I can't think of her name.
> A. I can't either. Harrington.
> Q. Harrington, the standard practice in the probate court over there was to allow these things to go forward without pre-approval?
> A. **Absolutely. (James Pohlman Deposition Transcript, Page 20 and 21, Lines 6-18)**

### III. Argument

   a. **Defendant's actions as Executrix of the Estate of Paula Minzing and the debt arising from the exceptions to account were not defalcation under 11 USC 523(a)(4).**

Plaintiff's complaint is based on 11 U.S.C. 523(a)(4) which excepts the discharge of debt in bankruptcy that is as a result of "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C.A. § 523(a)(4). Subsequent to the commencement of this

6

adversary proceeding, the Supreme Court of the United States addressed the longstanding question of the standards required to meet the term defalcation. *See Bullock v. BankChampaign, N.A.,* 133 S. Ct. 1754, 1759 (2013).

The Court in *Bullock* held that defalcation requires an intentional wrong including "conduct that the fiduciary knows is improper but also reckless conduct of the kind that the criminal law often treats as the equivalent." *Id.* The risk must be of such a nature or degree that it involves a "gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation." *Id.* at 1760. Applying the canon of interpretation, *noscitur a sociis,* the Court found that a wrongful intent should be required of each of the terms listed in §523(a)(4) and that this requirement did not make the term defalcation identical to its statutory neighbors which include other requirements or apply outside the fiduciary capacity. *Id.* Overall, the interpretation is consistent with the enduring principle that "exceptions to discharge should be confined to those plainly expressed." *Id.* Policy does not dictate a broader interpretation particularly when applied to cases such as the one here where a "nonprofessional" trustee is involved. *Id.* at 1761.

Under this standard, knowledge of improper fiduciary conduct or recklessness in that the fiduciary consciously disregards a substantial and unjustifiable risk that conduct will violate fiduciary duty is required for defalcation. *Id.* at 1759. Applied to the evidence before this Court, Klausing's knowledge and subsequent actions do not meet the definition of defalcation. The record is clear that she did not have actual knowledge of the standard applied by the Probate Court; in fact her counsel who had practice in the Court for over 30 years understood there to be no such requirement. Further, she cannot be found to have acted with reckless disregard because she in good faith relied upon her counsel's advice and recommendations. Counsel has confirmed

7

such advice in his affidavit, his answer, his deposition and in the documents he executed concurrently with Klausing that there was good grounds for such actions. *See First Beverly Bank v. Adeeb (In re Adeeb),* 787 F.2d 1339, 1343 (9th Cir.1986) ("Generally, a debtor who acts in reliance on the advice of his attorney lacks the intent required to deny him a discharge of his debts."); Cuervo v. Snell (In Re: Snell), 240 B.R. 728, 730 (Bnkr. S.D. Ohio 1999) ("Courts have held that actual intent to ... [defraud] a creditor can be negated by reliance upon the advice of an attorney."); *OnBank & Trust Co. v. Siddell (In re Siddell),* 191 B.R. 544, 554 (Bankr.N.D.N.Y.1996) ("[W]here the debtor's reliance is reasonable and in good faith, 'the advice of counsel may ... negate the inference of fraudulent intent.' " (quoting *Aetna Ins. Co. v. Nazarian (In re Nazarian),* 18 B.R. 143, 147 (Bankr.D.Md.1982))). See also *In re Weber*, 99 B.R. 1001, 1018 (Bankr. D. Utah 1989) and *Ramos v. Rivera,* 217 B.R. 379, 386 (Bankr. Conn., 1998).

  b. **The Plaintiff is collaterally estopped from asserting that the Probate Court's finding that Defendant had breached her fiduciary duties and owes the Probate Estate constitutes defalcation under § 523(a)(4) of the Bankruptcy Code.**

The equitable doctrine of *res judicata* encompasses two similar, but operationally distinct, bars to re-litigating similar issues: claim preclusion, sometimes called "true" *res judicata,* and issue preclusion, or "collateral estoppel." *See Migra v. Warren City Sch. Dist. Bd. of Ed.,* 465 U.S. 75, 77, n. 1, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984) (internal citations omitted); *Dubuc v. Green Oak Twp.,* 312 F.3d 736, fn. 4 (6th Cir.2002). Issue preclusion provides that "a fact or a point that was actually and directly at issue in a previous action, and was passed upon and determined by a court of competent jurisdiction, may not be drawn into question in a subsequent action between the same parties or their privies." *Trafalgar Corp. v. Miami County*

*Bd. Of Comm'rs.,* 519 F.3d 285, 287 (6th Cir.2008) The Sixth Circuit has held that issue preclusion requires the party seeking the preclusion to establish the following elements:

> (1) the precise issue raised in the present case must have been raised and actually litigated in the prior proceeding; (2) determination of the issue must have been necessary to the outcome of the prior proceeding; (3) the prior proceeding must have resulted in a final judgment on the merits; and (4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding. *Kosinski v. C.I.R.,* 541 F.3d 671, 675 (6th Cir.2008) (internal citation omitted); *see also Spilman v. Harley,* 656 F.2d 224, 229 (6th Cir.1981) (holding that the party asserting the estoppel has the burden of proving that the requirements have been met).

The doctrine of collateral estoppel, also referred to as issue preclusion, prevents a party from relitigating issues that were actually litigated in a prior proceeding. The doctrine is based on the efficient use of judicial resources and on a policy of discouraging parties from ignoring actions brought against them. The Supreme Court has held that the doctrine applies in nondischargeability proceedings. *Grogan v. Garner*, 498 U.S. 279, 285, n. 11, 111 S.Ct. 654, 658 (1991). In applying collateral estoppel principles from a state court judgment to nondischargebility proceedings, federal common law does not apply. *Bay Area Factors, Inc. v. Calvert,* 105 F.3rd 315, 317 (6th Cir. 1997) In this case, the Judgments are founded upon Ohio law.

In order for collateral estoppel to apply under Ohio law, the following elements must be established:

> 1) A final judgment on the merits in the previous case after a full and fair opportunity to litigate the issue;
>
> 2) The issue must have been actually and directly litigated in the prior suit and must have been necessary to the final judgment;
>
> 3) The issue in the present suit must have been identical to the issue in the prior suit;

9

> 4) The party against whom estoppel is sought was a party or in privity with a party to the prior action. *Murray v. Wilcox (In re Wilcox),* 229 B.R. 411, 415-16 (Bankr. N.D. Ohio 1998) (citing *Cashelmara Villas Ltd. Partnership v. DiBenedetto*, 623 N.E.2d 213, 215 (Ohio Ct. App. 1993).

The required analysis and evidentiary basis for granting summary judgment in this proceeding is to determine if the findings in the Probate Court as well as the malpractice proceeding[6] are sufficient to sustain a finding that Klausing did not commit an act of "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." There was a final judgment entered in Probate Court and the parties involved are the same parties to the instant case. (See Judgment Entry attached as Exhibit A). While the issue of fraud or defalcation in the context of 11 U.S.C 523(a)(4) was not the subject matter of the Probate case or the malpractice action, the evidence advanced in such proceedings was germane to such issues and go directly to Klausing's "knowledge and lack thereof as well as the issue of her reckless disregard for the likelihood that her conduct would cause a certain result." *See Bullock at* 1759. The Plaintiff participated in such proceedings, including cross examination of both Klausing and Pohlman and thus had a full and fair opportunity to litigate this issue. Based on the undisputed facts set forth above, the evidence is clear that Klausing did not did not commit an act of "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."

## IV, Conclusion

Defendant's debt to the Estate of Paula Minzing is dischargeable because it did not arise constitute an act of fraud or defalcation by Defendant in her fiduciary capacity as Executrix for that Estate. Defendant did not have knowledge of or demonstrate gross recklessness in respect to her actions in carrying out her relevant fiduciary duties. Defendant was acting in reliance on the

---

[6] The Plaintiff was party to both proceedings and participated in the depositions.

advice of her experienced counsel when she made the relevant decisions in her fiduciary capacity for the Estate.

/s/Steven L. Diller<br>
Steven L. Diller

**CERTIFICATE OF SERVICE**

I, Steven L. Diller, do hereby certify that a copy of the foregoing was served this 2nd day of October, 2013, to US Trustee, BP America Building, 200 Public Square, 20th Floor, Suite 3300, Cleveland, Ohio 44114, to Mr. Bruce C. French, Attorney at Law, PO Box 839, Lima, Ohio 45802 and to Douglas Daley, Esq. at 1728 Allentown Road, Lima, Ohio 45805-1856 45201 by ordinary US mail or the Court's ECF system.

/s/Steven L. Diller<br>
Steven L. Diller